UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSEPH LAFFERTY,<br><br>Defendant. | 3:25-CR-30066-ECS<br><br><br>REPORT AND RECOMMENDATION<br>ON MOTION TO SUPPRESS |

Joseph Lafferty seeks to suppress, on privilege grounds, alleged threatening statements he made to staff at a tribal behavioral health facility. He maintains the statements are inadmissible under the psychotherapist-patient privilege. The government asserts the privilege does not apply. The Court concurs with the government that Lafferty's statements are not privileged.

## BACKGROUND

Late in the afternoon on July 21, 2025, Lafferty showed up at the Cheyenne River Behavioral Health Center in Eagle Butte wanting to talk to someone right away. He told

1

the receptionist, Joy Howard Red Bear, that if he didn't, there would be dead people on the tribal council. Red Bear immediately notified the Center's director, Toni Handboy, of what Lafferty said. Handboy and Ann LeBeau, a medical health technician at the Center, then met with an angry and upset Lafferty. They tried to calm him down, but did not have much success. At some point, Lafferty let them know that he had a gun and it to kill certain persons, who he named, and a woman with ugly hair. Just before leaving, Lafferty apprised Handboy and LeBeau that they knew what was going to happen and that things were in their hands.

Concerned that Lafferty's statements were threats to harm others she had to disclose, Handboy contacted tribal law enforcement and the named targets and reported the perceived threats. The reports led to a criminal investigation and eventually to Lafferty being indicted for threatening Justin Keckler, an IHS official and one of the individuals Lafferty mentioned.

Lafferty then moved to suppress the statements he made to Red Bear, Handboy, and LeBeau on confidentiality and privilege grounds. The government opposed the motion, arguing that Lafferty's statements are not privileged and thus fair game as trial evidence.

## STANDARD OF REVIEW

Common law governs evidentiary privileges in federal court.[1] Fundamental to any privilege analysis is the principle that "the public … has a right to every man's evidence."[2] A court thus "start[s] with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional[.]"[3] Privileges, as exceptions to this duty, "are not lightly created nor expansively construed, for they are in derogation of the search for truth."[4]

One such exception to the demand for every man's evidence is the psychotherapist-patient privilege.[5] In *Jaffee*, the Supreme Court held "that confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure…."[6] The *Jaffee* Court extended the privilege to include licensed social workers in addition to licensed psychiatrists and psychologists.[7]

---

[1] Fed. R. Evid. 501; *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 169 (2011).
[2] *Trammel v. United States*, 445 U.S. 40, 50 (1980) (quoting *United States v. Bryan*, 339 U.S. 323, 331 (1950)).
[3] *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996) (quotations omitted).
[4] *United States v. Nixon*, 418 U.S. 683, 710 (1974).
[5] *Jaffee*, 518 U.S. at 15.
[6] *Id.*
[7] *Id.* at 15–16.

A party invoking the privilege has the burden of showing that his communications were made (1) confidentially; (2) to a licensed psychotherapist; and (3) in the course of diagnosis or treatment."[8] Without proof of all three, there is no privilege.[9]

## CONFIDENTIALITY VS. PRIVILEGE

Confidential and privileged communications should not be conflated. A "concern for protecting confidentiality does not equate to privilege."[10] An expectation of confidentiality, or even a state law requiring it, does not create a federal evidentiary privilege.[11] To be privileged, communications must be more than just confidential; they must be made to a credentialed person for a specific purpose.[12]

In the context of communications made to a psychotherapist, "[t]here is a marked difference between state confidentiality requirements and federal testimonial privileges."[13] A voluntary, unsolicited disclosure of a defendant's threats to law enforcement before the commencement of federal criminal proceedings does not

---

[8] *United States v. Wynn*, 827 F.3d 778, 787 (8th Cir. 2016); *United States v. Ghane*, 673 F.3d 771, 781 (8th Cir. 2012).
[9] *See Wynn*, 827 F.3d at 787.
[10] *Richardson v. Sexual Assault/Spouse Abuse Rsch. Ctr., Inc.*, 270 F.R.D. 223, 227 (D. Md. 2010).
[11] *In re Grand Jury Investigation*, No. 17-2587, 2017 WL 11140345, at *3 (D.D.C. Oct. 23, 2017).
[12] *Jaffee*, 518 U.S. at 15; *see also United States v. Romo*, 413 F.3d 1044, 1048 (9th Cir. 2005) ("the privilege applies only when a therapist practices his craft, not whenever a therapist and a patient communicate"); *Tesser v. Bd. of Educ.*, 154 F. Supp. 2d 388, 393 (E.D.N.Y. 2001) ("whether the privilege attaches requires consideration of the nature, timing[,] and the purpose of the communication").
[13] *United States v. Richter*, No. 1:21-CR-355, 2021 WL 6197899, at *4 (N.D. Ohio Dec. 30, 2021) (citing *United States v. Chase*, 340 F.3d 978 (9th Cir. 2003) (en banc)).

4

implicate the psychotherapist-patient privilege.[14] If improper, such a disclosure could result in civil liability or disciplinary action against the therapist.[15] But the threats the defendant made are not barred from evidentiary use unless they also fall within the privilege.[16]

## DISCUSSION

Lafferty is alleged to have made two sets of threatening statements on July 21 he claims are privileged—one to Red Bear and the other to Handboy and LeBeau. Each will be addressed in turn.

### A. Red Bear

Red Bear let Lafferty in after he rang the doorbell to the Behavioral Health Center.[17] The two went back to her office.[18] There, Red Bear asked what she could do for him.[19] Lafferty, who was "irate and pissed off," demanded to speak to someone, telling Red Bear "if I don't talk to somebody right f***ing now, there's going to be some dead people tonight, there's going to be a dead chairman and council reps."[20] Taking what he

---

[14] *Chase*, 340 F.3d at 985; *Richter*, 2021 WL 6197899, at *4–5.
[15] *Chase*, 340 F.3d at 985.
[16] *Id.*; *Richter*, 2021 WL 6197899, at *4–5.
[17] Dkt. No. 57 at 33, 39–40, 45.
[18] *Id*. at 33, 45.
[19] *Id*. at 33.
[20] *Id*. at 33–34, 47.

5

said seriously, Red Bear walked Lafferty to the waiting room, locked her office door, and went and got Handboy.[21]

Lafferty contends that his statements to Red Bear are privileged and cannot be used against him. But Red Bear was not a licensed psychotherapist at the time who was engaged in the diagnosis or treatment of a mental or emotional condition.[22] Nor could she, as a receptionist, be considered a paraprofessional who worked closely with, and under the direct supervision of, a licensed provider rendering mental health services.[23]

Lafferty's statements, even if intended to be confidential, were not privileged.[24] They are therefore admissible as substantive evidence at trial.

### B. Handboy and LeBeau

Lafferty messaged Handboy about "suffering emotionally" and "losing control of [his] objectivity."[25] She told him that the Behavioral Health Center had "on call" if he wanted to meet with someone as a walk-in.[26] Lafferty said he did and drove to the

---

[21] *Id*. at 34.
[22] *Id*. at 41, 43.
[23] *Id*. at 31–32, 41, 43; *see also United States v. Schwensow,* 151 F.3d 650, 657 (7th Cir. 1998) (privilege did not protect communications to AA volunteers who were neither licensed counselors nor acting as therapists or counselors).
[24] *Ghane*, 673 F.3d at 783–84 (statements made to physician's assistant during ER intake interview were not privileged); *United States v. Shirk*, No. 1:21-CR-0017, 2022 WL 100230, at *15 (M.D. Pa. Jan. 10, 2022) (statements to nurses not privileged given the context the statements were made).
[25] Dkt. No. 53, Ex. 3 at 1.
[26] *Id*.

6

Center.[27] After insisting that he talked to someone "right f***ing now,"[28] Handboy and LeBeau met with him in the waiting room.[29] Lafferty expressed his frustration to them about tribal government corruption and his failing health.[30]

LeBeau provided Lafferty with the intake forms required for treatment.[31] He looked at the forms but refused to sign them.[32] One form contained a limited confidentiality provision that stated, "threats of harm to another [], including murder and assault[,]" were not confidential and may have to be reported to third parties in accordance with "[s]tate law mandates."[33] LeBeau likewise advised Lafferty that she and Handboy had a duty to disclose any threats of harm to others.[34]

While talking to Handboy and LeBeau, Lafferty remarked that he had a gun and was going to kill people.[35] When asked what his plan was, Lafferty named five people he intended to harm, one of whom was Keckler.[36] Upon hearing this, Handboy and LeBeau notified Lafferty that they had to report what he said.[37] As he was getting ready to leave, Lafferty declared, "Now you guys have it in your hands. You know what's

---

[27] Dkt. No. 53, Ex. 3 at 1.
[28] Dkt. No. 57 at 34.
[29] *Id*. at 98–99.
[30] *Id*. at 115.
[31] *Id*. at 55–56, 99–100, 115, 132.
[32] *Id*. at 59, 62, 75, 99–102.
[33] Dkt. No. 53, Ex. 1 at 3; Dkt. No. 57 at 58.
[34] Dkt. No. 57 at 134–35.
[35] *Id*. at 63–64, 103.
[36] *Id*.
[37] *Id*. at 104.

going to happen. I just needed somebody to know."[38] He left on his own a short time later.[39]

Believing that Lafferty had made credible threats and that she had a duty to report them, Handboy contacted tribal law enforcement, two or three providers, and the individuals targeted.[40] She also prepared notes regarding the incident and her response to the same.[41]

Lafferty messaged Handboy again after the office visit about breaches of HIPAA confidentiality and "Lakota trust."[42] Handboy did not respond to any of his messages.[43]

1. **Confidentiality**

To be privileged, a patient's statements must be made in confidence.[44] The confidentiality requirement is fatal to Lafferty's privilege claim. He knew his alleged threatening statements would be reported.[45] He thus had no reasonable basis for believing the statements were, and would remain, confidential.[46]

---

[38] *Id*. at 105.
[39] *Id*. at 64, 105.
[40] *Id*. at 105–07, 127–30, 132–33, 135–36.
[41] Dkt. No. 53, Ex. D.
[42] *Id*. at Ex. 3.
[43] Dkt. No. 57 at 107–08.
[44] *Jaffee*, 518 U.S. at 15.
[45] Dkt. No. 57 at 58–59, 86, 100–01, 134–35.
[46] *United States v. Auster*, 517 F.3d 312, 315–16, 320 (5th Cir. 2008).

Handboy and LeBeau informed Lafferty that they were mandatory reporters and what that meant.[47] LeBeau let him know before the statements, that any threats of harm to himself or others would have to be disclosed.[48] She also handed Lafferty—beforehand—an informed consent form, that included a confidentiality limitation, explained the duty to warn, and attempted to complete the form with him.[49] When Lafferty made the supposed threats, he knew they would be reported and not kept confidential. As a result, he had no reasonable expectation of confidentiality in them. Without such an expectation, there is no privilege.[50]

2. **Licensure**

Nor can there be a privilege where, as here, the individuals involved were not licensed psychotherapists or social workers.[51] Handboy was a licensed addictions counselor[52] and LeBeau has never had a professional license.[53] Neither possessed the credentials that qualified them to receive privileged communications.[54] And Lafferty had no relationship, or even an appointment, with a qualified provider and did not

---

[47] Dkt. No. 57 at 58–59, 86, 134–35.
[48] *Id*.
[49] *Id*. at 85–86, 100–01, 115, 132, 134–35.
[50] *Auster*, 517 F.3d at 316, 320.
[51] *Jaffee*, 518 U.S. at 15–17; *Ghane*, 673 F.3d at 780–83.
[52] Dkt. No. 57 at 87, 94, 120, 123, 133.
[53] *Id*. at 52–53, 69, 90.
[54] *Id*. at 52–53, 69, 90, 94, 133.

appear interested in one.[55] He therefore cannot legitimately claim that his statements to Handboy and LeBeau, whether made in confidence or not, are privileged.[56]

### 3. Diagnosis or Treatment

That Lafferty's statements were not made in the course of diagnosis or treatment defeats any claim of privilege as well.[57] Handboy and LeBeau were trying to figure out why he came to see them and what he needed help with.[58] They did not diagnose, treat, or provide therapy to him during their encounter.[59] He refused to sign the required forms for treatment and left in an agitated state after a 35 to 40-minute dialogue.[60] What's more, there is no evidence that Handboy and LeBeau gathered or used information from Lafferty in any later diagnosis or treatment. Handboy's electronic note, summarizing the walk-in meeting with him, was not a "treatment" record that cloaks his conversations with the privilege.[61] The threats Lafferty is alleged to have

---

[55] *Id*. at 33, 35, 59, 62, 100–02, 132–33.
[56] *Wynn*, 827 F.3d at 787; *Ghane*, 673 F.3d at 780–83; *see also United States v. Blue*, 340 F. Supp. 3d 862, 866 (D.S.D. 2018) (no privilege where DSS caseworkers not licensed and treating alleged victims); *United States v. Durham*, 93 F. Supp. 3d 1291, 1295 (W.D. Okla. 2015) (concluding, after reviewing federal cases addressing the issue, that there is a bright-line rule requiring that the qualified provider be licensed for the privilege to apply).
[57] *Ghane*, 673 F.3d at 783–84; *see also Romo*, 413 F.3d at 1048 (the defendant's confession to a licensed professional counselor, who had provided defendant with psychological counseling, was not privileged because there was no evidence of defendant's intentions and the record lacked any evidence that the meeting involved therapy, diagnosis, or treatment); *Blue*, 340 F. Supp. 3d at 866 (privilege not applicable because there was no evidence that the communications were made during the course of treatment or diagnosis).
[58] Dkt. No. 57 at 85, 126.
[59] *Id*. at 65, 85, 106.
[60] *Id*. at 59, 62, 75, 87, 101, 132–33.
[61] *Ghane*, 673 F.3d at 783–84.

made, as part of those conversations, are not protected and may be used in the government's case-in-chief at trial.

## CONCLUSION

The psychotherapist-patient privilege Lafferty seeks to avail himself of does not apply to his statements to Red Bear, Handboy, and LeBeau. The statements were not made (1) in confidence; (2) to a qualified provider; and (3) in the course of diagnosis or treatment. [62] So they are all admissible in the prosecution of him for threatening Keckler, as charged in count I of the indictment. Because Lafferty cannot prevail on his privilege-based suppression motion, it should be denied.

## RECOMMENDATION

For the reasons stated in this report, the authorities cited in it, and the record now before the Court, it is

RECOMMENDED that Lafferty's motion to suppress[63] be denied.

## NOTICE

The parties have 14 calendar days after service of this report and recommendation to object.[64] Unless an extension of time for cause is later obtained,

---

[62] *Wynn*, 827 F.3d at 787; *Ghane*, 673 F.3d at 781–84.
[63] Dkt. No. 34.
[64] 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(2).

failure to timely object will result in the waiver of the rights to appeal questions of fact.[65]

Objections must "identify[ ] those issues on which further review is desired."[66]

DATED this 19th day of December, 2025.

BY THE COURT:

*(signature)*

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**

---

[65] *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990) (per curiam); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986).
[66] *Nash*, 781 F.2d at 667 (quoting *Thomas v. Arn*, 474 U.S. 140, 155 (1985)).